E. D. CALHOUN, JR. AND VILA AUTRY CALHOUN, CO-EXECUTORS OF THE ESTATE OF JOHN R. CALHOUN, DECEASED v. JOHN S. CALHOUN AND KATHIE W. CALHOUN

No. 8412SC1330

(Filed 6 August 1985)

**Contracts § 27.1; Gifts § 1— loan or gift—time of repayment—jury questions**

In an action to recover the unpaid balance of an alleged $10,000 loan made by decedent to his nephew, the evidence presented questions for the jury as to whether the $10,000 was a gift or whether there was an agreement to repay this amount; whether the terms of such agreement required defendant nephew to pay decedent only if decedent needed the money; whether decedent and defendant agreed on a twelve-month renewable note with unlimited renewal privileges; and whether the parties failed to designate a time frame for defendant's performance of his obligation to repay and, if so, what constitutes a reasonable time for repayment.

APPEAL by plaintiffs from *Herring, Judge*. Judgment entered 6 September 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 7 June 1985.

*Butler, High, Baer & Jarvis, by Ervin I. Baer and Rebecca F. Person, for plaintiff appellants.*

*Beaver, Thompson, Holt & Richardson, P.A., by H. Gerald Beaver, for defendant appellees.*

BECTON, Judge.

In this action by the estate of John R. Calhoun, deceased, to recover the unpaid balance of alleged loans made by John R. Calhoun to his nephew, John S. Calhoun, we must determine the propriety of the trial court's judgment granting defendants' Rule 50 motion for a directed verdict. The only evidence presented by the plaintiffs in this case was the testimony of the defendant-nephew, John S. Calhoun (nephew).

The purpose of a motion for a directed verdict under Rule 50 of the Rules of Civil Procedure is to test the legal sufficiency of the non-movant's evidence to take the case to the jury, *Wallace v. Evans*, 60 N.C. App. 145, 298 S.E. 2d 193 (1982), and the evidence is to be taken in the light most favorable to the non-movant. *Husketh v. Convenient Systems, Inc.*, 295 N.C. 459, 245 S.E. 2d 507 (1978). Considering the well-established principle that the evidence presented should be considered in the light most favorable to the non-moving party, we first review the facts in the light most favorable to the plaintiffs.

On 28 December 1977, defendant, who had owned and operated The Medicine Shoppe for eight years, needed to borrow money to purchase a building for his business. Defendant testified:

> I discussed with my mother that I needed to borrow some money, and on or about December 28, 1977, we went to see Uncle John at his house on 301 South, Fayetteville, North Carolina. Everyone knew that he had a considerable amount of money. . . . Plaintiffs' Exhibit #4 is a check, which I received, made out to me and my wife dated December 28, 1977, for Eight Thousand Dollars ($8,000.00) signed by my uncle, John R. Calhoun. At the bottom of the check on the line where it says "For," there are written the words, "Loan, building." After I received the check, I deposited it in my account at Southern National Bank.

Thereafter, on 11 January 1978, defendant received an additional sum of $2,000 by way of a check from his uncle. This check contained a notation on the memorandum portion which read: "Loan."

Sometime after the transactions, the defendant drafted a "memorandum" of the transactions, which recited that his uncle had loaned him $10,000 and that he would pay 8% interest upon the unpaid balance. Defendant then gave the memorandum to his uncle, who, after signing it and returning it to the defendant, stated that he did not want a copy. On redirect examination, the defendant admitted that he had also signed a paper writing, which stated that the memorandum in question "was a twelve-month renewable note with unlimited renewable privileges."

Approximately one year after receiving the $10,000, defendant gave his uncle a check in the amount of $800, representing 8% of the $10,000 borrowed. The uncle accepted the check, but, according to defendant, only because "the farm payment was late and Aunt Lena [the uncle's wife] was running up considerable expenses at the nursing home and so he would take it for her expenses." The uncle then, according to the defendant, directed defendant to tear up the memorandum, stating that if he (the uncle) needed the money, he would ask defendant for its return. Defendant destroyed the memorandum. The uncle died on 3 February 1979, and, although defendant was aware of a "Notice to Creditors" published by the estate, defendant has never repaid the money to the estate. Defendant denies that the transaction was a loan, stating that it was not a debt.

Defendant testified that the notations "Loan, building" and "Loan" were placed on the check because his uncle "did not want to have to pay gift tax on the money." Defendant admits, however, paying his uncle $800 in interest but testified that he was only to repay his uncle if his uncle needed the money. Defendant then stated that his characterization of the transaction as a "twelve-month renewable note with unlimited renewable privileges . . . was incorrect word usage on my part. . . . [I]t was not a twelve-month renewable note as a banker or lawyer would say it." As plaintiffs state in their brief: "Somewhere amidst this confusing paradox of testimony lies the true agreement between the parties; a factual determination which should be made only by a jury."

Further, defendants' four alternate positions convince us that this matter needs to be resolved by a jury. Defendant contends: (1) that his uncle made *inter vivos* gifts; or (2) that since the

$10,000 was to be repaid on the demand of his uncle, this suit brought in 1982 is barred by the three-year statute of limitations regarding breach of contract; or (3) that any alleged indebtedness was forgiven and a valid *inter vivos* gift was completed when his uncle, with donative intent, directed him to destroy the memorandum of the transaction; or (4) that the alleged loans were discharged since his uncle made no demand for payment prior to his death.

Only defendants' statute of limitations defense merits further discussion. When the facts are admitted or established, the determination of the expiration of the statute of limitations is a matter of law. *Teele v. Kerr*, 261 N.C. 148, 134 S.E. 2d 126 (1964). When the facts are in dispute and there is evidence justifying the inference that the statute of limitations has not run, however, the question whether the cause of action is barred is a mixed question of law and fact which should be decided by the jury. *Industrial Distrib. Inc. v. Mitchell*, 255 N.C. 489, 122 S.E. 2d 61 (1961). In this case there is a clear dispute regarding the existence of an agreement to repay the $10,000.

And if there is such an agreement, there is a clear dispute as to the terms of that agreement. Was defendant only to pay his uncle if his uncle needed the money? Or did the parties agree on a twelve-month renewable note with unlimited renewal privileges? These questions point out why this case was inappropriate for directed verdict. Significantly, the jury could find the existence of a valid debt; and, at the same time, find that the parties failed to designate a time frame for defendant's performance of his obligation to pay the money back. In that event, the determination of what constitutes a reasonable time for repayment is a mixed question of law and fact which should be resolved by the jury. *See Helms v. Prikopa*, 51 N.C. App. 50, 275 S.E. 2d 516 (1981).

In short, a motion for directed verdict under Rule 50 should not be granted when facts are in dispute. Considering defendant's direct, cross and redirect examination testimony, there is considerable disagreement as to the nature of the transactions between the defendant and his uncle that resulted in the defendant receiving $10,000 from his uncle. Until the jury makes that factual

determination, the applicability of the three-year statute of limitations cannot be decided. We, therefore

Reverse.

Judges PHILLIPS and EAGLES concur.